Edward D. Manzo *(pro hac vice application pending)*
edward.manzo@huschblackwell.com
Donald Mizerk (State Bar No. 208477)
don.mizerk@huschblackwell.com
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606-3912
Telephone: (312) 526-1535
Facsimile: (312) 655-1501

Ben M. Davidson (State Bar No. 181464)
DAVIDSON LAW GROUP, ALC
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone:   (310) 473-2300
Facsimile:    (310) 473-2941
Email:   *bdavidson@davidson-lawfirm.com*

Attorneys for Plaintiff
STORMTRAP, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **STORMTRAP LLC.**, a Limited Liability Company organized according to the laws of Illinois,<br><br>                              Plaintiff,<br><br>v.<br><br>**PRE-CON PRODUCTS**, a California Corporation,<br><br>                              Defendant. | Case No.:  2:cv-17-7018<br><br>**COMPLAINT FOR PATENT INFRINGEMENT;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff StormTrap LLC, ("StormTrap") for its Complaint herein, alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., and seeking injunctive relief and damages under 35 U.S.C. §§ 283-285.

## INTRODUCTION

### THE PARTIES AND THE UNDERGROUND STORM WATER DETENTION/RETENTION BUSINESS

Plaintiff StormTrap

2.     Plaintiff StormTrap is a limited liability company organized and existing under the laws of the State of Illinois. Its principal place of business is in Romeoville, IL.

3.     StormTrap is in the business of designing and manufacturing solutions for underground storm water management, including systems comprised of precast concrete modules for detention and retention of storm water. Such systems are typically used beneath parking lots, thoroughfares or plazas, in association with commercial establishments including malls or educational institutions, and other sites. The SINGLETRAP® and DOUBLETRAP® systems are two of StormTrap's storm water management products.

4.     StormTrap's precast modular design technology allows for off-site fabrication of modules and on-site installation of customizable systems which fit all types of job site parameters. StormTrap prepares bids for installations of storm water retention or detention systems using modules of different types. When it is awarded a contract, StormTrap causes precast concrete modules to be manufactured and shipped to the site for installation according to the approved plan. The modular construction provides competitive advantages to StormTrap. The following representation shows how some StormTrap modules can be assembled and used:

1



5.      StormTrap is an innovator in the design and manufacture of underground storm water management systems and holds over twenty patents worldwide for innovations in relating to storm water management technology, including seven U. S. patents. Many more applications are pending. StormTrap uses its patented inventions in products which are sold in the United States and around the world.

Defendant Pre-Con

6.      Defendant Pre-Con Products ("Pre-Con" or "Defendant") is a corporation organized and existing under the laws of the State of California. Upon information and belief, Pre-Con's principal office and place of business is located at 240 W. Los Angeles Avenue, Simi Valley, California 93064.

7.      Upon information and belief, Pre-Con was formed circa 1963 by Don Domingo Zarraonandia. Mr. Zarraonandia's sons now run the company, and on belief, David Zarraonandia is its current president. Pre-Con manufactures and offers for sale several product lines, some of which are pre-cast concrete products such as catch basins, manholes, pull boxes, reinforced concrete pipe, and valve vaults and pump

stations.

8.     Upon information and belief, Pre-Con entered the field of precast concrete underground storm water detention systems and has marketed, offered for sale and sold at least one system named the STORM PRISM SP360 system.

9.     Pre-Con has advertised the STORM PRISM SP360 system for sale in the U.S., including on the Pre-Con website (http://www.preconproducts.com), which at one time included the following rendering of a STORM PRISM SP360 system:



10.     Pre-Con offers and sells its STORM PRISM SP360 system to compete directly with StormTrap in the business for underground storm water detention and retention.

11.     Pre-Con adopted StormTrap's modular precast concrete business model– the STORM PRISM SP360 system is also based on modular construction. Individual modules are fabricated away from the installation site, transported to the site, and assembled at the site using a crane or other heavy machinery into either a single-level configuration or a double-level configuration.

12.     The STORM PRISM SP360 system includes at least three different types of modules – an interior module, a side module, and a corner module. A STORM PRISM SP360 system is typically designed and assembled with several interior

modules flanked by as many side modules as needed, with corner modules placed in the corners.   The following illustration shows a STORM PRISM SP360 interior module that Pre-Con has offered for sale and sold:



As can be seen, it includes a generally rectangular top or "deck" and has support structures that extend down from the deck. The support structures are inwardly spaced from the sides and ends of the deck with all four sides of the deck overhanging the support structures. As shown, there is an unobstructed path at the bottom extending through the interior of the module (shown representatively in the above illustration as extending from "southwest' to a "northeast").

13.    This STORM PRISM SP360 interior module also includes four unobstructed spaces underneath the four deck overhangs.  Two of these spaces extend in the same "southwest' to "northeast" direction in the illustration in Para. 12 with the other two spaces extending in a perpendicular direction (diagonally in the "southeast" to "northwest" directions).

14.    The following illustrations show STORM PRISM SP360 side and corner modules that Pre-Con has offered for sale and sold:

///

///

///

///

///

4
**COMPLAINT**



| STORM PRISM SP360 side module | STORM PRISM SP360 corner module |

## JURISDICTION AND VENUE

15.     The causes of action herein for patent infringement arise under the patent laws of the United States, 35 U.S.C. § 271. This Court has subject matter jurisdiction over the claims for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     This Court has personal jurisdiction over Pre-Con at least because it has committed acts of direct and indirect patent infringement in this judicial district and resides in this judicial district.

17.     Venue is proper in this district under 28 U.S.C. § 1400(b).

## FIRST CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 6,991,402

18.     StormTrap incorporates by reference each and every allegation contained in Paragraphs 1 through 17 as though fully set forth at length herein.

19.     StormTrap owns all right, title, and interest in U.S. Patent No. 6,991,402 ("the '402 patent"), including the right to sue thereon and the right to recover for infringement thereof. Exhibit A to this Complaint is a true and correct copy of the '402 patent.

20.    The '402 patent was duly and legally issued to StormTrap by the United States Patent and Trademark Office ("USPTO") on January 31, 2006.

21.    The '402 patent is valid and enforceable.

22.    StormTrap has not granted any license to Pre-Con under the '402 patent.

23.    The '402 patent generally invents a solution for underground storm water detention or retention and involves a modular construction, typically of pre-cast concrete. The '402 patent addresses problems of fluid flow within the module or assembly. It also concerns side modules for an assembly.   At least the STORM PRISM SP360 system uses the '402 patented invention.

24.    Pre-Con has directly infringed and is continuing to infringe at least Claims 42-43, and 45-47 of the '402 patent, literally and via equivalents, in violation of 35 U.S.C. § 271, by making, using, importing, offering to sell, and/or selling in this judicial district and elsewhere at least the STORM PRISM SP360 system; and has indirectly infringed the '402 patent by inducing others to install or use at least the STORM PRISM SP360 system within the United States.

25.    Claims 42-43, and 45-47 of the '402 patent are directed to and claim an assembly for retaining or detaining storm water beneath a ground surface and provide channels for relatively unconstrained fluid flow in longitudinal and lateral directions. The STORM PRISM SP360 system also provides channels for relatively unconstrained fluid flow in longitudinal and lateral directions.

26.    Pre-Con directly infringes, both literally and equivalently, at least independent apparatus claim 42 of the '402 patent. That claim recites as follows (with lettering added for reference purposes):

[A]    42. An assembly for retaining or detaining storm water beneath a ground surface comprising:

[B]    at least one first module having a horizontally disposed deck portion and at least one substantially vertically disposed side portion extending therefrom, said deck portion and said side

6

**COMPLAINT**

portion have respective end edges, and said side portion having bottom edges;

[C]   said side portion and said deck portion defining a longitudinal channel in said first module;

[D]   said side portion having at least one opening therein and defining a lateral channel in said first module;

[E]   said longitudinal channel and said lateral channel being in fluid communication with one another;

[F]   each said channel extending upwardly from said bottom edges to allow relatively unconstrained flow in the longitudinal and lateral directions; and

[G]   the assembly further including a plurality of side modules, each side module having a corresponding horizontally disposed deck portion and two corresponding substantially vertically disposed side portions extending from opposite longitudinal sides of said side module deck portion so as to define a corresponding longitudinal channel;

[H]   wherein the plurality of side modules includes some of said side modules having one of said side portions which define no openings,

[I]   all of said side modules having another one of said side portions having at least one opening therein, said opening of said side module being aligned and in fluid communication with a selected one of said channels of said first module.

27.   In claim 42, claim elements 42[B] through [F] concern "first" modules while claim elements [G] through [I] concern the side modules.

///

///

28.   The STORM PRISM SP360 system includes the feature of the claim preamble 42A because Storm Prism modules are combined into an assembly for managing the detention or retention of storm water beneath a ground surface.

29.   The STORM PRISM SP360 system includes the features of claim element 42B because Storm Prism modules have horizontal decks, vertical side portions, and end edges, even though the side portions are curved. The side portion also has bottom edges. An interior Storm Prism module is a "first module."

30.   The STORM PRISM SP360 system includes the features of claim element 42C, which concerns the "first module," which as noted above is an interior module in the STORM PRISM SP360 system. Interior modules in the STORM PRISM SP360 system have three longitudinal channels. One channel extends between the side portions and the two others are beside the outsides of the side portions and under the cantilevered (overhanging) part of the deck.

31.   The STORM PRISM SP360 system includes the features of claim element 42D because each side portion of an interior module has an opening defining an interior lateral channel in that module. Two outer lateral channels also exist beside the side portions and under the cantilevered (overhanging) part of the deck.  The outer lateral channels beside the side portions connect with the interior lateral channel extending between the side portions.

32.   The STORM PRISM SP360 system includes the features of claim element 42E because all of the channels of each module are in fluid communication with one another.

33.   The STORM PRISM SP360 system includes the features of claim element 42F because each outer channel outward of a side portion extends all the way to the bottom edges to allow relatively unconstrained flow in the lateral and longitudinal directions. Although the interior lateral channels have a beam that interrupts flow in the lateral direction, the outer channels allow unconstrained flow in both directions, and when the liquid level reaches the height of the beam, the interior

lateral channel also permits unconstrained lateral flow. The other channel between the side portions extends all the way to the bottom of the module and thus permits unconstrained flow.

34. The STORM PRISM SP360 system includes the features of claim element 42G, which concerns including plural side modules in the assembly. Side modules are used around most of the periphery of an assembly. The STORM PRISM SP360 system includes side modules, each having a horizontal deck and two vertical side portions. To any extent that the side portions do not extend from opposite longitudinal sides, they are slightly offset from the sides of the deck portion. They perform the same function of supporting the deck and defining channels. They perform the same way, by providing a downward-extending structure from the deck portion, and the result is the same – the modules are capable of detaining or retaining liquid and are stackable (or not, as desired).

35. The STORM PRISM SP360 system includes the features of claim element 42H because most of its outer walls are without openings.

36. Finally, the STORM PRISM SP360 system includes the features of claim element 42I because all of the side modules have an opening in the side portion that faces the interior of the assembly, and that opening is aligned with and in fluid communication with a corresponding channel of an interior module. Also, the side modules have outer channels that are beside the side portions and are likewise aligned with corresponding channels of the adjoining interior module.

37. For at least these reasons, Pre-Con through its offering for sale and/or sale of at least the STORM PRISM SP360 system in the United States is directly infringing the '402 patent under 35 U.S.C. § 271(a).

38. Additionally, whenever Pre-Con or its customer or installer makes, uses, or assembles at least the STORM PRISM SP360 system in the United States, that is a further act of direct infringement under 35 U.S.C. § 271(a).

///

39.    Pre-Con has been and is still actively, knowingly and intentionally aiding and abetting and inducing infringement of the '402 patent by non-parties in violation of 35 U.S.C. § 271(b), including end-users, despite Pre-Con's knowledge of the '402 patent.

40.    By reason of Pre-Con's infringing activities, StormTrap has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

41.    Pre-Con's acts complained of herein have damaged and will continue to damage StormTrap irreparably. StormTrap has no adequate remedy at law for these wrongs and injuries. StormTrap is therefore entitled to injunctive relief restraining and enjoining Pre-Con and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the '402 patent.

42.    Pre-Con is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any apparatus or process/method claimed in the '402 patent, and Pre-Con's conduct is, in every instance, without the consent of StormTrap.

43.    StormTrap called Pre-Con's attention to its infringement of the aforementioned patent. Pre-Con requested more particular information in the form of claim charts, which StormTrap voluntarily provided. These were extensive and detailed amounting to 38 pages of single-spaced claim charts (for all of the patents at issue herein). Pre-Con has consistently avoided responding with even one reason why it does not infringe StormTrap's patents. Despite this correspondence, Pre-Con continues to offer its STORM PRISM SP360 system for sale in the United States.

44.    Pre-Con's infringement has been and continues to be willful.

## SECOND CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 7,344,335

45.    StormTrap incorporates by reference each and every allegation contained in Paragraphs 1 through 44 as though fully set forth at length herein.

///

46.    StormTrap owns all right, title, and interest in U.S. Patent No. 7,344,335 ("the '335 patent"), including the right to sue thereon and the right to recover for infringement thereof. Exhibit B to this Complaint is a true and correct copy of the '335 patent.

47.    The '335 patent was duly and legally issued to StormTrap by the USPTO on March 18, 2008.

48.    The '335 patent is valid and enforceable.

49.    StormTrap has not granted any license to Pre-Con under the '335 patent.

50.    The '335 patent generally invents a solution for underground storm water detention or retention and involves a modular construction. The '335 patent addresses problems of fluid flow within the module or assembly of modules. The '335 patent also concerns detention or retention of storm water in a double-level structure.  The STORM PRISM SP360 system uses the '335 patented invention.

51.    Pre-Con has directly infringed and is continuing to infringe claims 2, 5-6, 9-12, 15-16 and 19-20 the '335 patent, literally and via equivalents, in violation of 35 U.S.C. § 271, by making, using, importing, offering to sell, and/or selling in this judicial district and elsewhere at least the STORM PRISM SP360 system; and has indirectly infringed the '335 patent by inducing end users to use at least the STORM PRISM SP360 system.

52.    Claims 2, 5, 9 and 10 of the '335 patent each individually depend from independent claim 1.  These claims are directed to a method for retaining or detaining storm water beneath a ground surface and provide for placing a first level within the ground comprising a plurality of modules and placing a second level within the ground comprising a plurality of modules which are supported by the first level of modules. Pre-Con has made, used, offered for sale and/or sold a double-level STORM PRISM SP360 system where a plurality of modules are placed within the ground in a first level and another plurality of modules are placed within the ground in a second level supported by the first level of modules.

53.     Pre-Con directly infringes, both literally and equivalently, method claims 2, 5, 6, 9 and 10 of the '335 patent.

54.     Claim 2 of the '335 patent depends from independent claim 1.  Claim 1 of the '335 patent recites the following (with lettering added for reference purposes):

[A]     1.   A method for retaining or detaining storm water beneath a ground surface comprising the steps of:

[B]     placing a first level within the ground comprising a plurality of modules in a first configuration, wherein each module comprises a horizontally disposed deck portion and at least one substantially vertically disposed side portion extending therefrom, said deck portion and said side portion have respective end edges, and said side portion respectively having an edge opposite the deck portion;

[C]     placing a second level within the ground comprising a plurality of modules in a second or inverted configuration, said inverted modules being supported by the first level, wherein each inverted module comprises a corresponding horizontally disposed deck portion and at least one corresponding substantially vertically disposed side portion extending therefrom, said deck portion and said side portion of said inverted module have respective end edges, and said side portion respectively having an edge opposite the deck portion;

[D]     connecting a plurality of longitudinal channels each defined by at least a portion of a selected one of the first level and the second level; and

[E]     connecting a plurality of lateral channels each defined by at least a portion of a selected one of the first level and the second level.

///
///

55.    The STORM PRISM SP360 system includes the feature of the claim preamble 1A because the  system is used for retaining or detaining storm water beneath a ground surface.

56.    The STORM PRISM SP360 system includes the features of claim element 1B because installers place a lower level of modules within the ground in a first configuration where the module's deck portion is lowermost. The deck portion is horizontally disposed. The module has side portions which are vertical. The deck and side portions have end edges.   The side portion end edges are opposite the deck portion.

57.    The STORM PRISM SP360 system includes the features of claim element 1C because a second level of modules is placed within the ground in an inverted orientation with respect to the lower level. The second level modules are supported by the first level modules. Each second level module has the same deck and side wall configuration as the lower level modules.

58.    The STORM PRISM SP360 system includes the features of claim element 1D because each module has an opening in a first direction which can be called "longitudinal." It is a U-shaped opening. U-shaped openings of the first and second levels are aligned. These are connected to adjoining modules and form a plurality of longitudinal channels.

59.    The STORM PRISM SP360 system includes the features of claim element 1E because U-shaped openings in positions 90 degrees away from the longitudinal openings are in both the first and second level modules and are aligned. They are connected to adjoining modules and form plural lateral channels, each defined by at least a portion of the first and second level modules.

60.    Dependent claim 2 of the '335 patent depends from independent claim 1 and recites:

///

///

> 2.  The method of claim 1 wherein at least one deck portion of the second level includes an opening for flow of stormwater.

61.   The STORM PRISM SP360 system includes the features of dependent claim 2 of the '335 patent because it has (a) every element recited in independent claim 1 (see paragraphs 55-59 supra) and (b) an opening in the deck portion of the upper level of modules.   Openings in the deck portion of the Storm Prism assembly are representatively shown in the following illustration:



62.   Dependent claim 5 of the '335 patent depends from independent claim 1 and recites:

> 5. The method of claim 1 wherein said longitudinal channels and said lateral channels are defined in part by the first level, which includes a plurality of elongated U-shaped modules, each module formed from a corresponding deck and two corresponding side walls extending from opposite longitudinal sides of the deck, wherein the steps of connecting said channels include installing a plurality of U-shaped modules within the ground in an upright configuration at a predetermined depth.

63.    The STORM PRISM SP360 system includes the features of dependent claim 5 of the '335 patent because it has (a) every element recited in independent claim 1 (see paragraphs 55-59 supra), (b) longitudinal and lateral channels defined in part by the supports of the modules in the first level, (c) modules that are U-shaped in cross-section (shown representatively in the following illustration);



(d) a horizontal deck and two vertical side portions that extend from opposite longitudinal sides of the deck, and (e) upper level modules installed upright and at a predetermined depth where the Storm Prism is provided as a double level assembly as shown representationally in the below illustration.



64.    Moreover, the STORM PRISM SP360 is equivalent in that the side portions (a) perform the same function of supporting the deck and defining channels; (b) perform in an equivalent manner by providing a downward-extending structure from the deck portion, and (c) produce the same result – the modules are capable of

detaining or retaining liquid and are stackable (or not, as desired).

65.    Dependent claim 6 of the '335 patent depends from independent claim 1 and recites:

> 6. The method of claim 1 wherein said longitudinal channels and said lateral channels are defined in part by the second level, which includes a plurality of elongated U-shaped modules, each module formed from a corresponding deck and two corresponding side walls extending from opposite longitudinal sides of the deck, wherein the steps of connecting said channels include installing a plurality of U-shaped modules within the ground in an inverted configuration at a predetermined depth above the first level.

66.    The STORM PRISM SP360 system includes the features of dependent claim 6 of the '335 patent because it has (a) every element recited in independent claim 1 (see paragraphs 55-59 supra), (b)  longitudinal and lateral channels defined in part by the supports of the modules in the second level, (c) modules that are U-shaped in cross-section and (d) a horizontal deck and two vertical side portions that extend from opposite longitudinal sides of the deck, and (d) connection between the lateral and longitudinal channels being made by installing a plurality of U-shaped modules (the upper level modules of the Storm Prism) within the ground in an inverted configuration on top of the first level of modules (the upper level being stacked upon the lower level with the deck of the lower level of modules being lowermost and the deck of the upper leel of modules being uppermost).

67.    Moreover, the STORM PRISM SP360 is equivalent in that the side portions (a) perform the same function of supporting the deck and defining channels; (b) perform in an equivalent manner by providing a downward-extending structure from the deck portion, and (c) produce the same result – the modules are capable of detaining or retaining liquid and are stackable (or not, as desired).

68.     Dependent claim 9 of the '335 patent depends from independent claim 1 and recites:

> 9. The method of claim 1 wherein said longitudinal channels and said lateral channels are each defined by respective portions of at least one substantially horizontal deck and at least one substantially vertical side wall of said first and second levels.

69.     The STORM PRISM SP360 system includes the features of dependent claim 9 of the '335 patent because (a) it has every element recited in independent claim 1 (see paragraphs 55-59 supra) and (b) provides longitudinal and lateral channels defined by portions of the horizontal decks and walls of the upper and lower level modules.

70.     Dependent claim 10 of the '335 patent depends from independent claim 1 and recites:

> 10. The method of claim 1 further comprising providing an outer boundary for said channels, said outer boundary being formed by a plurality of peripheral walls that include some wall portions which define no openings and other wall portions which define no openings other than at least one assembly access port located therein.

71.     The STORM PRISM SP360 system includes the features of dependent claim 10 of the '335 patent because it includes (a) every element recited in independent claim 1 (see paragraphs 55-59 supra) and (b) side and/or corner modules providing (i) an outer boundary for the lateral and longitudinal channels, and (ii) some outside walls which are generally solid without openings with one module including a side wall opening for access.

72.     Independent claim 11 with dependent claims 12, 15-16 and 19-20 of the '335 patent are directed to an assembly for retaining or detaining storm water beneath

a ground surface and provide for a first level comprising a plurality of upright modules and a second level comprising a plurality of inverted modules. Pre-Con has made, used, offered for sale and sold a double-level STORM PRISM SP360 system having a first level comprising a plurality of upright modules and a second level comprising a plurality of inverted modules.

73. Pre-Con directly infringes, both literally and equivalently, apparatus claims 11-12, 15-16 and 19-20 of the '335 patent.

74. Claim 11 of the '335 patent recites the following (with lettering added for reference purposes):

[A] 11. An assembly for retaining or detaining storm water beneath a ground surface comprising:

[B] a first level comprising a plurality of upright modules;

[C] a second level comprising a plurality of inverted modules;

[D] each of said upright and inverted modules having a horizontally disposed deck portion and at least one substantially vertically disposed side portion extending therefrom, said deck portion and said side portion have respective end edges, and said side portion respectively having an edge opposite the deck portion;

[E] a plurality of longitudinal channels each defined by a selected one of said first level and said second level; and

[F] a plurality of lateral channels each defined by a selected one of said first level and said second level.

75. The STORM PRISM SP360 system includes the feature of the claim preamble 11A because Storm Prism modules are used for retaining or detaining storm water beneath a ground surface.

///

///

///

76.    The STORM PRISM SP360 system includes the features of claim element 11B because it includes a lower level of modules within the ground in a first configuration where the module's deck portion is lowermost.

77.    The STORM PRISM SP360 system includes the features of claim element 11C because it includes a second upper level of modules having an inverted orientation with respect to the lower level. The second level modules are supported by the first level modules.

78.    The STORM PRISM SP360 system includes the features of claim element 11D because the modules of the upper and lower level each have a deck portion that is horizontally disposed and vertical side portions extending from the deck. The deck and side portions have end edges.  The side portion end edges are opposite the deck portion.

79.    The STORM PRISM SP360 system includes the features of claim element 11E because each module has an opening in a first direction which can be called "longitudinal." It is a U-shaped opening. U-shaped openings of the first and second levels are aligned. These are connected to adjoining modules and form a plurality of longitudinal channels.

80.    The STORM PRISM SP360 system includes the features of claim element 11F because U-shaped openings in positions 90 degrees away from the longitudinal openings are in both the first and second level modules and are aligned. They are connected to adjoining modules and form plural lateral channels, each defined by at least a portion of the first and second level modules.

81.    Dependent claim 12 of the '335 patent depends from independent claim 11 and recites:

> 12.  The assembly of claim 11 wherein at least one deck
> portion of the second level includes an opening for flow of
> stormwater.

///

82. The STORM PRISM SP360 system includes the features of dependent claim 12 of the '335 patent because it includes (a) every element recited in independent claim 11 (see paragraphs 74-80 supra) and (b) an opening in the deck portion of the upper level of modules.

83. Dependent claim 15 of the '335 patent depends from independent claim 11 and recites:

> 15. The assembly of claim 11 wherein said longitudinal channels and said lateral channels are defined in part by the first level, which includes a plurality of elongated U-shaped modules, each module formed from a corresponding deck and two corresponding side walls extending from opposite longitudinal sides of the deck.

84. The STORM PRISM SP360 system includes the features of dependent claim 15 of the '335 patent because it includes (a) every element recited in independent claim 11 (see paragraphs 74-80 supra), (b) longitudinal and lateral channels defined in part by the supports of the modules in the first level, (c) modules that are U-shaped in cross-section, and (d) a horizontal deck and two vertical side portions that extend from opposite longitudinal sides of the deck.

85. The STORM PRISM SP360 is equivalent in that the side portions (a) perform the same function of supporting the deck and defining channels; (b) perform in an equivalent manner by providing a downward-extending structure from the deck portion, and (c) produce the same result – the modules are capable of detaining or retaining liquid and are stackable (or not, as desired).

86. Dependent claim 16 of the '335 patent depends from independent claim 11 and recites:

> 16. The assembly of claim 11 wherein said longitudinal channels and said lateral channels are defined in part by the second level, which includes a plurality of elongated U-

20

shaped modules, each module formed from a corresponding deck and two corresponding side walls extending from opposite longitudinal sides of the deck.

87. The STORM PRISM SP360 system includes the features of dependent claim 16 of the '335 patent because it includes (a) every element recited in independent claim 11 (see paragraphs 74-80 supra), (b) longitudinal and lateral channels defined in part by the supports of the modules in the second level, (c) modules that are U-shaped in cross-section, and (d) each module having a horizontal deck and two vertical side portions that extend from opposite longitudinal sides of the deck.

88. The STORM PRISM SP360 is equivalent in that the side portions (a) perform the same function of supporting the deck and defining channels; (b) perform in an equivalent manner by providing a downward-extending structure from the deck portion, and (c) produce the same result – the modules are capable of detaining or retaining liquid and are stackable (or not, as desired).

89. Dependent claim 19 of the '335 patent depends from independent claim 11 and recites:

19. The assembly of claim 11 wherein said longitudinal channels and said lateral channels are each defined by respective portions of at least one substantially horizontal deck and at least one substantially vertical side wall of said first and second levels.

90. The STORM PRISM SP360 system includes the features of dependent claim 19 of the '335 patent because it includes (a) every element recited in independent claim 11 (see paragraphs 74-80 supra) and (b) longitudinal and lateral channels defined by portions of the horizontal decks and walls of the upper and lower level modules.

///

91.     Dependent claim 20 of the '335 patent depends from independent claim 11 and recites:

>   20. The assembly of claim 11 wherein each said channel has about the same cross section.

92.     The STORM PRISM SP360 system includes the features of dependent claim 20 of the '335 patent because it includes (a) every element recited in independent claim 11 (see paragraphs 74-80 supra) and (b) lateral and longitudinal channels having about the same cross section.

93.     For at least these reasons, Pre-Con through its making, using, offering for sale and/or sale of at least the STORM PRISM SP360 system in the United States is directly infringing the '335 patent under 35 U.S.C. § 271(a).

94.     Additionally, whenever Pre-Con or its customer or installer makes, uses, or assembles at least the STORM PRISM SP360 system in the United States, that is a further act of direct infringement of the '335 patent under 35 U.S.C. § 271(a).

95.     Pre-Con has been and is still actively, knowingly and intentionally aiding and abetting and inducing infringement of the '335 patent by non-parties in violation of 35 U.S.C. § 271(b), including end-users, despite Pre-Con's knowledge of the '335 patent.

96.     By reason of Pre-Con's infringing activities, StormTrap has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

97.     Pre-Con's acts complained of herein have damaged and will continue to damage StormTrap irreparably. StormTrap has no adequate remedy at law for these wrongs and injuries. StormTrap is therefore entitled to injunctive relief restraining and enjoining Pre-Con and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the '335 patent.

98.     Pre-Con is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any apparatus or process/method claimed in the '335 patent, and Pre-Con's conduct is, in every instance, without the consent of StormTrap.

99.     StormTrap called Pre-Con's attention to its infringement of the aforementioned patent. Pre-Con requested more particular information in the form of claim charts, which StormTrap voluntarily provided. These were extensive and detailed amounting to 38 pages of single-spaced claim charts. Pre-Con has consistently avoided responding with even one reason why it does not infringe StormTrap's patents. Despite this correspondence, Pre-Con continues to offer its STORM PRISM SP360 system for sale in the United States.

100.     Pre-Con's infringement has been and continues to be willful.

### THIRD CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 7,160,058

101.     StormTrap incorporates by reference each and every allegation contained in Paragraphs 1 through 100 as though fully set forth at length herein.

102.     StormTrap owns all right, title, and interest in U.S. Patent No. 7,160,058 ("the '058 patent"), including the right to sue thereon and the right to recover for infringement thereof.

103.     The '058 patent was duly and legally issued to StormTrap by the USPTO on January 9, 2007.  Exhibit C to this Complaint is a true and correct copy of the '058 patent.

104.     The USPTO conducted an inter partes reexamination of the '058 patent at the behest of Oldcastle Precast, Inc., which filed a Request for Inter Partes Reexamination ("Reexamination Request") of claims 1-18 of the '058 Patent with the USPTO on July 1, 2009.

105.     During the reexamination of the '058 patent, StormTrap amended claims 16 and 17 of the '058 patent and added new claims 19-26. The USPTO determined that the amended and new claims are patentable and the remaining original claims are also patentable.

///

106. On February 22, 2011, the USPTO issued Reexamination Certificate US 7,160,058 C1 resulting from the reexamination of the '058 patent. (See Exhibit C).

107. The '058 patent is valid and enforceable.

108. StormTrap has not granted any license to Pre-Con under the '058 patent.

109. The '058 patent generally invents a solution for underground storm water detention or retention and involves a modular construction, typically of pre-cast concrete. The '058 patent addresses problems of fluid flow within the assembly by providing longitudinal and lateral flow channels that are in fluid communication. It also concerns side modules or an outer boundary or wall for the assembly. The STORM PRISM SP360 system uses the '058 patented invention.

110. Pre-Con has directly infringed and is continuing to infringe the '058 patent, literally and via equivalents, as defined by certain claims of the patent, in violation of 35 U.S.C. § 271, by making, using, importing, offering to sell, and selling in this judicial district and elsewhere at least the STORM PRISM SP360 system; and has indirectly infringed the '058 patent by inducing end users to use at least the STORM PRISM SP360 system.

111. Independent claim 1 of the '058 patent is generally directed to and claims a method for retaining or detaining storm water beneath a ground surface by connecting a plurality of longitudinal channel with a plurality of later channels in fluid communication. Independent claims 8, 16 and 24 of the '058 patent are generally directed to an assembly for retaining or detaining storm water beneath a ground surface through modules providing for corresponding longitudinal and lateral flow channels. Independent claim 23 of the '058 patent is generally directed to a method for forming a structure for retaining or detaining storm water beneath a ground surface by providing an modules supported on an impermeable floor and which provide for corresponding longitudinal and lateral low channels in fluid communication. The STORM PRISM SP360 system uses the invention recited in claims 1, 8, 16, 23 and 24 of the '058 patent.

112.   Pre-Con directly infringes, both literally and equivalently, at least independent claims 1, 8, 16, 23 and 24 of the '058 patent.

113.   Claim 1 of the '058 patent recites as follows (with lettering added for reference purposes):

[A]   1. A method for retaining or detaining storm water beneath a ground surface comprising the steps of:

[B]   connecting a plurality of longitudinal channels each defined by at least one substantially horizontal deck and at least one substantially vertical side wall, each side wall having a bottom edge, said longitudinal channel extending upwardly from said bottom edge;

[C]   connecting a plurality of lateral channels each defined by a portion of a corresponding deck and a portion of a corresponding side wall so that said longitudinal channels are in fluid communication with said lateral channels, said lateral channel extending upwardly from a corresponding bottom edge,

[D]   said channels being in longitudinal and lateral alignment to form at least one continuous longitudinal channel and at least one continuous lateral channel for relatively unconstrained flow of the stormwater in the longitudinal and lateral directions;

[E]   providing an outer boundary for said channels, said outer boundary being formed by a plurality of peripheral walls;

[F]   placing said peripheral walls around said channels to form an assembly which receives the storm water through at least one assembly access port;

[G]   providing an impermeable floor for said channels; and

[H]   placing said floor to form a bottom surface of said channels.

**COMPLAINT**

114.   The STORM PRISM SP360 system includes the feature of the claim preamble 1A because Storm Prism modules are combined into an assembly for managing the detention or retention of storm water beneath a ground surface.

115.   The STORM PRISM SP360 system includes the features of claim element 1B because multiple interior modules of the Storm Prism system are placed into an assembly.  The support walls of each module are set inward from the outside edges of the deck portion so that one channel is between the support walls and two channels are outside them. These channels extend longitudinally, with the two channels outside the support walls (between support walls of longitudinally adjacent modules) extending upward from the bottom edge of the supports, regardless of whether the module is inverted or not.   Longitudinal channels become connected when the modules are placed next to one another in the longitudinal direction in the assembly. The three longitudinal channels of one module are thereby connected to the three corresponding longitudinal channels of the longitudinally-adjoining module in the assembly. The following illustration shows a representative view of such a Storm Prism assembly:



116.   The STORM PRISM SP360 system includes the features of claim element 1C because the support walls of each module are set inward from the outside edges of the deck portion so that channels exist both between and outside the support walls. These channels extend laterally. Lateral channels become connected when the

modules are placed next to one another in the lateral direction in the assembly. The lateral channels of one module are thereby connected to the corresponding channels of the laterally-adjoining module. The lateral channels between support walls of laterally-adjacent modules extend upward from the bottom edge of the supports, regardless of whether the module is inverted or not. The lateral channels are defined by a portion of a deck and side wall and are in fluid communication with the longitudinal channels.

117.   The STORM PRISM SP360 system includes the features of claim element 1D because the channels are aligned to form continuous longitudinal channels and continuous lateral channels for relatively unconstrained flow in both the longitudinal and lateral directions. Each channel beside the side portion extends upward from the bottom edge of the supports, so there is relatively unconstrained flow in both directions. Further, one channel extending through the interior module extends upward from the bottom, so it also has relatively unconstrained flow. (alignment of longitudinal and lateral channels of Storm Prism modules shown representatively in the following illustration):



118.   The STORM PRISM SP360 system includes the features of claim element 1E because side and corner modules of the assembly provide outer peripheral walls that constrain the flow of storm water (as shown in the representative views below).

///



119.   The STORM PRISM SP360 system includes the features of claim element 1F because the outer walls of the side and corner modules are located around the periphery of the channels, and the assembly receives storm water through at least one assembly access port (as shown in the following representative illustrations)





120. The STORM PRISM SP360 system includes the features of claim element 1G because in a multi-layer Storm Prism system where lower modules are inverted, the decks of the lower modules themselves provide an impermeable floor.

121. The STORM PRISM SP360 system includes the features of claim element 1H because in a double level Storm Prism system, the lower modules are placed in the assembly in an inverted position and form a bottom surface of the channels. In the case of a single level system, the installer can pour a concrete floor in-situ to form the bottom surface of the channels. The following photograph taken from the Precon website shows a concrete floor under an assembly.



122. Independent Claim 8 of the '058 patent recites as follows (with lettering added for reference purposes):

[A]   8. An assembly for retaining or detaining storm water beneath a ground surface comprising:

[B]   at least one first module having a horizontally disposed deck portion and at least one substantially vertically disposed side portion extending therefrom, said deck portion and said side portion have respective end edges, and said side portion having bottom edges;

///

[C]  said side portion and said deck portion defining a longitudinal channel in said first module;

[D]  said side portion having at least one opening therein and defining a lateral channel in said first module;

[E]  said longitudinal channel and said lateral channel being in fluid communication with one another;

[F]  each said channel extending upwardly from said bottom edges to allow relatively unconstrained flow of the stormwater in the longitudinal and lateral directions; and

[G]  the assembly further including at least one side module,

[H]  said side module having a corresponding horizontally disposed deck portion and at least one corresponding substantially vertically disposed side portion extending from a longitudinal side of said side module deck portion so as to define a corresponding longitudinal channel, said deck portion and said side portion of said at least one side module having corresponding end edges, and said side portion of said at least one side module having corresponding bottom edges, wherein said at least one side portion of said at least one side module defines no openings;

[I]  wherein said assembly is supported on an impermeable floor.

123.   The STORM PRISM SP360 system includes the feature of the claim preamble 8A because Storm Prism modules are combined into an assembly for managing the detention or retention of storm water beneath a ground surface.

124.   The STORM PRISM SP360 system includes the feature of claim element 8B because multiple modular units of the Storm Prism assembly are placed into an assembly.  The modular units have a horizontal deck portion and vertical side portions extending from the deck.  The deck portion and side portions of the Storm Prism modules have end edges and the side portion has a bottom edge.

125.   The STORM PRISM SP360 system includes the feature of claim element 8C because the support walls of each Storm Prism module are set inward from the outside edges of the deck portion so that one channel is between the support walls and two channels are outside the support walls. These channels extend longitudinally, with the two channels outside the support walls (between support walls of longitudinally adjacent modules) extending upward from the bottom edge of the supports, regardless of whether the module is inverted or not. Longitudinal channels become connected when the modules are placed next to one another in the longitudinal direction in the assembly. The three longitudinal channels of one module are thereby connected to the three corresponding longitudinal channels of the longitudinally-adjoining module in the assembly. The following illustration representatively shows a view of such a Storm Prism assembly:



126.   The STORM PRISM SP360 system includes the feature of claim element 8D because the support walls of each Storm Prism module are set inward from the outside edges of the deck portion so that channels exist both between and outside the support walls. These channels extend laterally. Lateral channels become connected when the modules are placed next to one another in the lateral direction in the assembly. The lateral channels of one module are thereby connected to the corresponding channels of the laterally-adjoining module. The lateral channels between support walls of laterally-adjacent modules extend upward from the bottom edge of the supports, regardless of whether the module is inverted or not. The lateral

channels are defined by a portion of a deck and side wall and are in fluid communication with the longitudinal channels.

127.   The STORM PRISM SP360 system includes the feature of claim element 8E because all of the channels are in fluid communication (as shown representatively in the following illustration):



128.   The STORM PRISM SP360 system includes the feature of claim element 8F because the outer channels as well as the interior channel extending through the module all extend upwardly from bottom edges of the modules to allow relatively unconstrained flow in the longitudinal and lateral directions.   The interior channel between the supports, where there are no lower connectors, permits unobstructed fluid as shown representatively in the following illustration:



There is also unobstructed flow in the lateral direction outside the supports, beneath the deck overhangs, i.e., in outer channels. The red line below shows outer channels with unobstructed flow:



129.   The STORM PRISM SP360 system includes the feature of claim element 8G because the Storm Prism system has side and corner modules which provide outer peripheral walls that constrain the flow of storm water (as shown representatively in the following illustrations).



130.   The STORM PRISM SP360 system includes the feature of claim element 8H because side modules of the Storm Prism assembly have a horizontal deck and two vertical side portions which are on the sides of the module, albeit slightly inwardly

offset from the outermost side edges of the deck.

131. The STORM PRISM SP360 is equivalent in that the side portions (a) perform the same function of supporting the deck and defining channels; (b) perform in an equivalent manner by providing a downward-extending structure from the deck portion, and (c) produce the same result – the modules are capable of detaining or retaining liquid and are stackable (or not, as desired).

132. The STORM PRISM SP360 system includes the feature of claim element 8I because in a double-level Storm Prism system, the lower modules are placed in the assembly in an inverted position and form a bottom impermeable surface for the channels. In the case of a single-level system, the installer can pour a concrete floor in-situ to form the bottom surface of the channels. The following photograph taken from the Precon website shows a concrete floor under a Storm Prism assembly.



133. Independent Claim 16 of the '058 patent recites as follows (with lettering added for reference purposes):

> [A]   16. An assembly for retaining or detaining storm water beneath a
> ground surface comprising:
>
> [B]    a plurality of first modules;

///

[C]   each first module having a substantially horizontally disposed deck portion and at least one substantially vertically disposed side portion extending therefrom, said deck portion and said side portion have respective end edges, and said side portion having bottom edges;

[D]   said side portion and said deck portion defining a longitudinal channel in said first module which is open at least at an end of said module;

[E]   said side portion having at least one opening therein and defining a lateral channel in said first module;

[F]   said longitudinal channel and said lateral channel being in fluid communication with one another;

[G]   each said channel extending upwardly from said bottom edges to allow relatively unconstrained flow of the stormwater in the longitudinal and lateral directions;

[H]   said plurality of first modules being aligned in a lateral direction and a longitudinal direction of said assembly,

[I]   said lateral channels and said longitudinal channels of adjacent first modules being in fluid communication therebetween,

[J]   said plurality of first modules forming at least one continuous lateral channel and at least one continuous longitudinal channel;

[K]   the assembly further including a plurality of second modules each having a substantially horizontally disposed deck portion and a substantially vertically disposed side wall extending from a side of the corresponding deck portion, wherein one or more of the side walls of the second modules provide at least a portion of an outside perimeter wall of the assembly; and

[L]   wherein said assembly is supported on an impermeable floor.

**COMPLAINT**

134.   The STORM PRISM SP360 system includes the feature of the claim preamble 16A because Storm Prism modules are combined into an assembly for managing the detention or retention of fluid beneath a ground surface.

135.   The STORM PRISM SP360 system includes the feature of claim element 16B because a Storm Prism assembly includes a plurality of interior modules (i.e., first modules).

136.   The STORM PRISM SP360 system includes the feature of claim element 16C because interior modules (i.e. first modules) of the Storm Prism assembly have a horizontal deck portion and vertical side portions extending from the deck.  The deck portion and side portions of interior Storm Prism modules have end edges and the side portion has a bottom edge.

137.   STORM PRISM SP360 system includes the feature of claim element 16D because the support walls of each interior Storm Prism module are set inward from the outside edges of the deck portion so that one channel is between the support walls and two channels are outside the support walls. These channels extend longitudinally and are open at the ends of the interior module, with the two channels outside the support walls (between support walls of longitudinally adjacent modules) extending upward from the bottom edge of the supports, regardless of whether the module is inverted or not.

138.   STORM PRISM SP360 system includes the feature of claim element 16E because the support walls of the Storm Prism interior module are set inward from the outside edges of the deck portion so that channels exist both between and outside the support walls. These channels extend laterally and are open at the sides of the module.

139.   STORM PRISM SP360 system includes the feature of claim element 16F because all of the channels are in fluid communication (as shown representatively in the following illustration):

///

///

140.   STORM PRISM SP360 system includes the feature of claim element 16G because the outer channels as well as the interior channel extending through the module all extend upwardly from bottom edges of the modules to allow relatively unconstrained flow in the longitudinal and lateral directions.   The interior channel between the supports, where there are no lower connectors, permits unobstructed fluid as shown representatively in the following illustration:



There is also unobstructed flow in the lateral direction outside the supports, beneath the deck overhangs, i.e., in outer channels. The red line below shows outer channels with unobstructed flow:

///

///

1
2
3
4
5
6
7
8
9
10



11   141.   STORM PRISM SP360 system includes the feature of claim element

12   16H because the interior modules of the Storm Prism are aligned in both the

13   longitudinal and lateral directions of the assembly. The following representative

14   illustration shows alignment of the interior modules in both longitudinal and lateral

15   directions:

16
17
18
19
20
21
22
23

24   142.   STORM PRISM SP360 system includes the feature of claim element 16I

25   because all of the channels are in fluid communication (as shown representatively in

26   the following illustration):

27   ///

28   ///

1
2
3
4
5
6
7
8
9
10



11   143.   STORM PRISM SP360 system includes the feature of claim element 16J
12   because the channels are aligned to form continuous longitudinal channels and
13   continuous lateral channels for relatively unconstrained flow in both the longitudinal
14   and lateral directions. Each channel beside the side portion extends upward from the
15   bottom edge of the supports, so there is relatively unconstrained flow in both
16   directions. Further, one channel extending through the interior module extends upward
17   from the bottom, so it also has relatively unconstrained flow. (alignment of
18   longitudinal and lateral channels of Storm Prism modules shown representatively in
19   the following illustration):

20
21
22
23
24
25
26



27   144.   STORM PRISM SP360 system includes the feature of claim element
28   16K because the Storm Prism system has side and corner modules which provide

outer peripheral walls that constrain the flow of storm water (as shown representatively in the views below). The side and corner modules of the Storm Prism assembly have a horizontal deck and two vertical side portions which are on the sides of the module, albeit slightly inwardly offset from the outermost side edges of the deck.

 

145.   The STORM PRISM SP360 is equivalent in that the side portions (a) perform the same function of supporting the deck and defining channels; (b) perform in an equivalent manner by providing a downward-extending structure from the deck portion, and (c) produce the same result – the modules are capable of detaining or retaining liquid and are stackable (or not, as desired).

146.   STORM PRISM SP360 system includes the feature of claim element 16L because in a double-level Storm Prism system, the lower modules are placed in the assembly in an inverted position and the decks of the lower modules themselves provide an impermeable floor.  In the case of a single level Storm Prism system, the installer can pour a concrete floor in-situ to form the bottom surface of the channels. The following photograph taken from the Precon website shows a concrete floor under an assembly.

///

///

///



147.  Independent Claim 23 of the '058 patent recites as follows (with lettering added for reference purposes):

[A]  23.  A method of forming a structure for retaining or detaining storm water beneath a ground surface comprising the steps of:

[B]  forming in-situ an impermeable, substantially flat, concrete floor beneath a ground surface;

[C]  placing a plurality of first precast concrete modules upon the floor, each module defining at least one channel, so that the floor forms a bottom surface of the channels,

[D]  wherein each of the first modules comprises a substantially horizontal deck and at least one substantially vertical side wall of the module, each side wall having a bottom edge;

[E]  at least some of the first modules defining a longitudinal opening and a lateral opening, each said opening extending to the bottom of the module and opening upwardly therefrom;

[F]  wherein the placing step includes placing the first modules adjacent one another in longitudinal and lateral alignment to form an array having at least some consecutive longitudinal channels

41

and at least some consecutive lateral channels, thereby permitting relatively unconstrained flow of the stormwater through said consecutive longitudinal and lateral channels;

[G] placing a further plurality of second modules each providing an outer boundary for said channels, said outer boundary being formed by a plurality of peripheral walls, wherein the peripheral walls extend around said channels to form an assembly which receives the stormwater through at least one assembly access port.

148. The STORM PRISM SP360 system includes the feature of the claim preamble 23A because Storm Prism modules are combined into an assembly for managing the detention or retention of fluid beneath a ground surface.

149. The STORM PRISM SP360 system includes the feature of claim element 23B because in the case of a single-level Storm Prism system, an installer can pour a concrete floor in-situ to form the bottom surface of the channels. The following photograph taken from the Precon website shows a concrete floor under an assembly.



150. The STORM PRISM SP360 system includes the feature of claim element 23C because the Storm Prism system includes interior modules (first modules) which define longitudinal, lateral and outer channels. Where an installer makes a concrete floor for a single-level Storm Prism installation, the concrete floor forms a bottom surface of all channels.

151. The STORM PRISM SP360 system includes the feature of claim element 23D because interior modules of the Storm Prism system have a horizontal deck portion and vertical side portions extending from the deck. The deck portion and side portions of interior Storm Prism modules have end edges and the side portion has a bottom edge.

152. The STORM PRISM SP360 system includes the feature of claim element 23E because interior modules of the Strom Prism system have an interior channel between the supports and outer channels outside the supports all with longitudinal openings. The longitudinal openings extend upwardly from bottom edges of the module to allow relatively unconstrained flow in the longitudinal direction. The interior longitudinal opening is shown representatively in the below figure as being between the supports. The outer longitudinal openings are outward of the supports and underneath the deck overhangs. All longitudinal openings extend upward from the bottom of the module.



Interior modules of the Storm Prism assembly also provide openings in the lateral direction which extend to the bottom of the module. These lateral openings are outside the supports, beneath the deck overhangs, i.e., in outer channels. The red line below representatively shows flow through lateral openings that open upwardly from the bottom of the module:

///

1
2
3
4
5
6
7
8
9
10



11      153.   The STORM PRISM SP360 system includes the feature of claim element

12  23F because interior Storm Prism units are placed adjacent to one another in

13  longitudinal and lateral alignment to form an array.  The support walls of each module

14  are set inward from the outside side edges of the deck portion so that one channel is

15  between the support walls and two channels are outside them. These channels extend

16  longitudinally, with the two channels outside the support walls (between support walls

17  of longitudinally adjacent modules) extending upward from the bottom edge of the

18  supports, regardless of whether the module is inverted or not.  Longitudinal channels

19  become connected when the modules are placed next to one another in the

20  longitudinal direction in the assembly. The three longitudinal channels of one module

21  are thereby connected to the three corresponding longitudinal channels of the

22  longitudinally-adjoining module in the assembly. The support walls of each module

23  are also set inward from the outside end edges of the deck portion so that lateral

24  channels exist both between and outside the support walls. The lateral channels

25  become connected when the modules are placed next to one another in the lateral

26  direction in the assembly. The lateral channels of one module are thereby connected to

27  the corresponding channels of the laterally-adjoining module. The lateral channels

28  between support walls of laterally-adjacent modules extend upward from the bottom

edge of the supports, regardless of whether the module is inverted or not.   The channels are aligned to form consecutive longitudinal channels and continuous lateral channels for relatively unconstrained flow in both the longitudinal and lateral directions. The following illustration representatively shows such a Storm Prism assembly with unconstrained flow through consecutive longitudinal and lateral channels:



154.   The STORM PRISM SP360 system includes the feature of claim element 23G because side modules and corner modules of the Storm Prism system are placed along the perimeter of the assembly and provide an outer boundary for the channels that is formed by a plurality of peripheral walls.  The Storm Prism assembly receives storm water through at least one assembly access port.  The following illustrations representatively show a Storm Prism assembly having such features.





155.   Independent Claim 24 of the '058 patent recites as follows (with lettering added for reference purposes):

[A]   24. An assembly for retaining or detaining storm water beneath a ground surface comprising:

[B]   a plurality of first modules; each first module having a horizontally disposed deck portion and at least one substantially vertically disposed side portion extending therefrom, said deck portion and said side portion have respective end edges, and said side portion having bottom edges;

[C]   said side portion and said deck portion defining a longitudinal channel in said first module which is open at least at an end of said module;

[D]   said side portion having at least one opening therein and defining a lateral channel in said first module;

[E]   said longitudinal channel and said lateral channel being in fluid communication with one another;

[F]   each said channel extending upwardly from said bottom edges to allow relatively unconstrained flow of the stormwater in the longitudinal and lateral directions;

[G]   said plurality of first modules being aligned in a lateral direction and a longitudinal direction of said assembly,

46

**COMPLAINT**

[H]  said lateral channels and said longitudinal channels of adjacent first modules being in fluid communication therebetween,

[I]  said plurality of first modules forming at least one continuous lateral channel and at least one continuous longitudinal channel;

[J]  wherein said assembly is supported on an impermeable floor; and

[K]  further comprising at least one further module providing a wall that constrains the flow of stormwater therebeyond.

156.   The STORM PRISM SP360 system includes the feature of the claim preamble 24A because the Storm Prism system is an assembly of modules for managing the detention or retention of storm water beneath a ground surface.

157.   The STORM PRISM SP360 system includes the feature of claim element 24B because it includes a plurality of interior modules (i.e., first modules) which have a horizontal deck portion and vertical side portions extending from the deck.  The deck portion and side portions of interior Storm Prism modules have end edges and the side portion has a bottom edge.

158.   The STORM PRISM SP360 system includes the feature of claim element 24C because the side portion and deck portions define longitudinal channels in the interior Storm Prism units which are open at each end.  The support walls of interior Storm Prism modules are set inward from the outer side edges of the deck portion so that one longitudinal channel is between the support walls and two longitudinal channels are outside the support walls (between support walls of longitudinally adjacent modules) These longitudinal channels are open at both ends of the module.

159.   The STORM PRISM SP360 system includes the feature of claim element 24D because the side portions of the interior Storm Prism units have openings which define lateral channels. The support walls of interior Storm Prism modules have an opening which forms a lateral channel through the side portion.  The support walls are also set inward from the outside end edges of the deck portion so that lateral channels exist outside the support walls.

160.   The STORM PRISM SP360 system includes the feature of claim element 24E because all of the channels are in fluid communication (as shown in the following representative illustration):



161.   The STORM PRISM SP360 system includes the feature of claim element 24F because Storm Prism interior modules have both lateral and longitudinal channels that extend upward from the bottom edge of the module to allow unconstrained flow in the lateral and longitudinal directions.  In the longitudinal direction, the interior channel between the side portions extends to the bottom of the module and provides unconstrained flow in the longitudinal direction.  The outer channels under the overhang at the sides of the deck portion and outside the side portions also extend to the bottom of the module and also provide unconstrained flow in the longitudinal direction.  In the lateral direction, each channel beside the side portion (under the overhang at the ends of the module) extends upward from the bottom edge of the supports to provide unconstrained flow in the lateral direction. (unconstrained flow through the Storm Prism system in the longitudinal and lateral directions is shown representatively in the following illustration):

///

///

///

///

1
2
3
4
5
6
7
8
9



10    162.   The STORM PRISM SP360 system includes the feature of claim element
11  24G because interior Storm Prism units are placed adjacent to one another in
12  longitudinal and lateral alignment to form the assembly.

13    163.   The STORM PRISM SP360 system includes the feature of claim element
14  24H because alignment of Storm Prism interior modules in the longitudinal and lateral
15  directions aligns the longitudinal and lateral channels of adjacent modules such that
16  they are in fluid communication.   The following illustration representatively shows a
17  Storm Prism system having such features.

18
19
20
21



22
23
24
25

26    164.   The STORM PRISM SP360 system includes the feature of claim element
27  24I because the channels are aligned to form continuous longitudinal channels and
28  continuous lateral channels for relatively unconstrained flow in both the longitudinal

and lateral directions. (alignment of longitudinal and lateral channels of Storm Prism modules is shown representatively in the following illustration):



165.   The STORM PRISM SP360 system includes the feature of claim element 24J because in a double-level Storm Prism system, the lower modules are placed in the assembly in an inverted position and the decks of the lower modules themselves provide an impermeable floor.  In the case of a single-level Storm Prism system, the installer can pour a concrete floor in-situ to form the bottom surface of the channels. The following photograph taken from the Precon website shows a concrete floor under a Storm Prism assembly.



///

///

166.   The STORM PRISM SP360 system includes the feature of claim element 24K because the Storm Prism system has side modules and corner modules which have a wall that constrains the flow of stormwater.   The following illustrations representatively show a Storm Prism assembly with walls of the side and corner modules constraining flow.





167.   For at least these reasons, Pre-Con through its making, using, offering for sale and/or sale of at least the STORM PRISM SP360 system in the United States is directly infringing the '058 patent under 35 U.S.C. § 271(a).

168.   Additionally, whenever Pre-Con or its customer or installer makes, uses, or assembles at least the STORM PRISM SP360 system in the United States, that is a further act of direct infringement of the '058 patent under 35 U.S.C. § 271(a).

169.   Pre-Con has been and is still actively, knowingly and intentionally aiding and abetting and inducing infringement of the '058 patent by non-parties in violation of 35 U.S.C. § 271(b), including end-users, despite Pre-Con's knowledge of the '058

patent.

170.   By reason of Pre-Con's infringing activities, StormTrap has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

171.   Pre-Con's acts complained of herein have damaged and will continue to damage StormTrap irreparably. StormTrap has no adequate remedy at law for these wrongs and injuries. StormTrap is therefore entitled to injunctive relief restraining and enjoining Pre-Con and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the '058 patent.

172.   Pre-Con is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any apparatus or process/method claimed in the '058 patent, and Pre-Con's conduct is, in every instance, without the consent of StormTrap.

173.   StormTrap called Pre-Con's attention to its infringement of the aforementioned patent. Pre-Con requested more particular information in the form of claim charts, which StormTrap voluntarily provided. These were extensive and detailed amounting to 38 pages of single-spaced claim charts. Pre-Con has consistently avoided responding with even one reason why it does not infringe StormTrap's patents. Despite this correspondence, Pre-Con continues to offer its STORM PRISM SP360 system for sale in the United States.

174.   Pre-Con's infringement has been and continues to be willful.

## FOURTH CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 8,770,890

175.   StormTrap incorporates by reference each and every allegation contained in Paragraphs 1 through 174 as though fully set forth at length herein.

176.   StormTrap owns all right, title, and interest in U.S. Patent No. 8,770,890 ("the '890 patent"), including the right to sue thereon and the right to recover for infringement thereof. Exhibit D to this Complaint is a true and correct copy of the '890 patent.

177.   The '890 patent was duly and legally issued to StormTrap by the USPTO on July 8, 2014.

178.   The '890 patent is valid and enforceable.

179.   StormTrap has not granted any license to Pre-Con under the '890 patent.

180.   The '890 patent generally invents a solution for underground storm water detention or retention and involves a modular construction, typically of pre-cast concrete. The '890 patent addresses problems of fluid flow within the module or assembly by providing modules having a top deck portion with a cantilevered section extending above and beyond a load-bearing support.  Such cantilevered arrangement provides for fluid flow within an outer channel beneath the cantilevered section of the deck portion in addition to flow through an interior channel between the supports.. It also concerns an assembly of modules having a stacked multi-layer configuration. The STORM PRISM SP360 system uses the '890 patented invention.

181.   Pre-Con has directly infringed and is continuing to infringe the '890 patent, literally and via equivalents, as defined by various claims of the patent, in violation of 35 U.S.C. § 271, by making, using, importing, offering to sell, and selling in this judicial district and elsewhere at least the STORM PRISM SP360 system; and has indirectly infringed the '890 patent by inducing end users to use at least the STORM PRISM SP360 system.

182.   Independent claim 1 of the '890 patent and dependent claims 2-5 and 9 which depend therefrom are directed to and claim an assembly for managing the flow of water beneath a ground surface which generally comprise a plurality of modules having a top deck portion extending beyond spaced-apart supports to provide a cantilevered section permitting flow beneath the cantilevered section; such flow being outward of the supports and in the same direction as fluid flow through an interior channel between the supports. The invention recited in claims 1-5 and 9 also include cross channels extending between spaced-apart legs of the supports and outer cross-channels. The STORM PRISM SP360 system is an assembly of modules having the

features recited in claims 1-5 and 9 of the '890 patent.

183.   Pre-Con directly infringes, both literally and equivalently, independent apparatus claim 1 of the '890 patent.  Claim 1 of the '890 patent recites as follows (with lettering added for reference purposes):

[A]   1. An assembly for managing the flow of water beneath a ground surface comprising:

[B]   a plurality of modules, each module including a deck portion and two supports that are load-bearing and extend from the deck portion to a bottom of the module;

[C]   each deck portion having a respective main section and two cantilevered sections extending laterally from the main section, the deck portion being located on top of the supports of the respective module, the deck portion having opposed side edges and opposed end edges, wherein each of said two supports is spaced inwardly from the nearest side edge of the nearest cantilevered section, wherein the side edges of the deck portion are side edges of the cantilevered sections;

[D]   wherein the supports for each of the modules are spaced apart from one another and together with the main section of the respective deck portion define an interior channel for fluid flow through the module;

[E]   wherein each cantilevered section and its nearest support in the same module define at least partially an outer channel for fluid flow, and wherein the interior channel and the outer channel are generally parallel to each other;

[F]   wherein at least one of the supports includes two spaced-apart, load-bearing legs that at least partially define a cross channel between the legs;

**COMPLAINT**

[G]   wherein the cross channels, the outer channels, and the interior channels are in fluid communication;

[H]   wherein each of the modules comprises concrete;

[I]   wherein the assembly includes at least three modules, at least two of which modules are aligned longitudinally and at least two of which are aligned laterally; and

[J]   wherein the thickness of the deck portion of each of the modules is smaller than the deck thickness that would be required if the deck section did not have a cantilevered section extending beyond said supports.

184.   The STORM PRISM SP360 system includes the feature of the claim preamble 1A because the system is an assembly of modules for managing the flow of water beneath a ground surface.

185.   The STORM PRISM SP360 system includes the features of claim element 1B because the system is comprised of a plurality of modules with each Storm Prism module having a horizontal deck portion and two vertical load-bearing supports which extend from the deck portion to a bottom of the module (as shown in the below representative illustrations of a Storm Prism module).



186.   The STORM PRISM SP360 system includes the features of claim element 1C because the deck portion of each Storm Prism module includes a main

section (shown within the circular broken line on the drawing below). Cantilevered sections extend laterally outward from the circular broken line. Each of the two supports is spaced inwardly from the nearest side edge of the nearest cantilevered section.  The side edges of the deck portion are side edges of the cantilevered sections.



187.   The STORM PRISM SP360 system includes the features of claim element 1D because the supports for each of the modules are spaced apart from one another and together with the main section of the respective deck portion, the supports define an interior channel for fluid flow through the module.

188.   The STORM PRISM SP360 system includes the features of claim element 1E because each cantilevered section and its nearest support in the same module define at least partially an outer channel for fluid flow. The outer channel is outward of the supports. The interior channel and the outer channel are generally parallel to each other, e.g., generally longitudinal (see representative illustration below).

///
///
///
///
///
///



189. The STORM PRISM SP360 system includes the features of claim element 1F because each support has two spaced apart, load-bearing legs that at least partially define a cross channel between the legs (as shown in the following representative illustration).



190. The STORM PRISM SP360 system includes the features of claim element 1G because all of the channels of each module are in fluid communication with one another as shown in the following representative illustration of a Storm Prism system.

///

///



191. The STORM PRISM SP360 system includes the features of claim element 1H because each module comprises concrete.

192. The STORM PRISM SP360 system includes the features of claim element 1I because a Storm Prism assembly includes three or more modules, at least two of which are aligned longitudinally and at least two of which are aligned laterally (see the representative illustration in Para 125 supra).

193. The STORM PRISM SP360 system includes the features of claim element 1J because the deck portion of the Storm Prism modules has a thickness that is smaller than would be needed with no cantilevering.

194. Claim 2 of the '890 patent depends from independent claim 1 and recites:

2.     The assembly of claim 1 wherein at least two of the modules are contiguous.

195. The STORM PRISM SP360 system includes the features of dependent claim 2 of the '890 patent because it includes (a) every element recited in independent claim 1 (see paragraphs 176-185 supra) and (b) the modules are contiguous in the assembly.

196. Claim 3 of the '890 patent depends from claim 2 and recites:

3.     The assembly of claim 2: wherein each of the two load-bearing module supports includes first and second spaced-apart legs which

are load-bearing and partially define the cross channel, and wherein each said module comprises precast concrete.

197. The STORM PRISM SP360 system includes the features of dependent claim 3 of the '890 patent because (a) it includes every element recited in claims 1 and 2 (see paragraphs 176-187 supra); (b) the two supports of each module include two spaced-apart legs which are load-bearing and partially define the cross channel, and (c) each module is precast concrete.

198. Claim 4 of the '890 patent depends from claim 3 and recites:

> 4. The assembly of claim 3 wherein some of the modules are located in a first level and some of the modules are located in a second level on top of the first level modules.

199. The STORM PRISM SP360 system includes the features of dependent claim 4 of the '890 patent because (a) it includes every element recited in claims 1-3 (see paragraphs 176-189 supra) and (b) in double level Storm Prism installations the modules are arranged in a first level and a second level on top of the first level (see the following representative photographs).

 

200. Claim 5 of the '890 patent depends from claim 4 and recites:

> 5. The assembly of claim 4 wherein modules of the first level are in an inverted position, and modules of the second level are in a non-inverted position.

201.   The STORM PRISM SP360 system includes the features of dependent claim 5 of the '890 patent because (a) it includes every element recited in claims 1-4 (see paragraphs 176-191 supra) and (b) in double level Storm Prism installations the system includes a first level of inverted modules and a second level of non-inverted modules on top of the inverted modules (see the following representative photograph).



202.   Claim 9 of the '890 patent depends from independent claim 1 and recites:

> 9.      The assembly of claim 1 wherein the plurality of modules are supported on an impermeable floor.

203.   The STORM PRISM SP360 system includes the features of dependent claim 9 of the '890 patent because (a) it includes every element recited in independent claim 1 (see paragraphs 176-185 supra) and (b) upon information and belief, in some Storm Prism assemblies modules are installed and supported on an impermeable concrete pad, slab or floor.

204.   For at least these reasons, Pre-Con through its making, using, offering for sale and/or sale of the STORM PRISM SP360 system in the United States is directly infringing the '890 patent under 35 U.S.C. § 271(a).

205.   Additionally, whenever Pre-Con or its customer or installer makes, uses, or assembles the STORM PRISM SP360 system in the United States, that is a further act of direct infringement of the '890 patent under 35 U.S.C. § 271(a).

206.   Pre-Con has been and is still actively, knowingly and intentionally aiding and abetting and inducing infringement of the '890 patent by non-parties in violation

of 35 U.S.C. § 271(b), including end-users, despite Pre-Con's knowledge of the '890 patent.

207.   By reason of Pre-Con's infringing activities, StormTrap has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

208.   Pre-Con's acts complained of herein have damaged and will continue to damage StormTrap irreparably. StormTrap has no adequate remedy at law for these wrongs and injuries. StormTrap is therefore entitled to injunctive relief restraining and enjoining Pre-Con and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the '890 patent.

209.   Pre-Con is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any apparatus or process/method claimed in the '890 patent, and Pre-Con's conduct is, in every instance, without the consent of StormTrap.

210.   StormTrap called Pre-Con's attention to its infringement of the aforementioned patent. Pre-Con requested more particular information in the form of claim charts, which StormTrap voluntarily provided. These were extensive and detailed amounting to 38 pages of single-spaced claim charts. Pre-Con has consistently avoided responding with even one reason why it does not infringe StormTrap's patents. Despite this correspondence, Pre-Con continues to offer its STORM PRISM SP360 system for sale in the United States.

211.   Pre-Con's infringement has been and continues to be willful.

## **FIFTH CLAIM FOR RELIEF**

### **(Patent Infringement—35 U.S.C. § 271)**

### **INFRINGEMENT OF U.S. PATENT NO. 9,428,880**

212.   StormTrap incorporates by reference each and every allegation contained in Paragraphs 1 through 211 as though fully set forth at length herein.

213.   StormTrap owns all right, title, and interest in U.S. Patent No. 9,428,880 ("the '880 patent"), including the right to sue thereon and the right to recover for

infringement thereof. Exhibit E to this Complaint is a true and correct copy of the '880 patent.

214.   The '880 patent was duly and legally issued to StormTrap by the USPTO on August 30, 2016.

215.   The '880 patent is valid and enforceable.

216.   StormTrap has not granted any license to Pre-Con under the '880 patent.

217.   The '880 patent generally invents a solution for underground storm water detention or retention and involves a module for use in a storm water assembly comprising a plurality of modules. The '880 patent addresses problems of fluid flow by providing a module having a spaced-apart supports and a top deck portion with a cantilevered section extending above and beyond the supports.  Such cantilevered arrangement provides for fluid flow within an outer channel beneath the cantilevered section of the deck portion in addition to flow through an interior channel between the supports.  The STORM PRISM SP360 system uses the '880 patented invention.

218.   Pre-Con has directly infringed and is continuing to infringe the '880 patent, literally and via equivalents, as defined by various claims of the patent, in violation of 35 U.S.C. § 271, by making, using, importing, offering to sell, and selling in this judicial district and elsewhere at least the STORM PRISM SP360 system; and has indirectly infringed the '880 patent by inducing end users to use at least the STORM PRISM SP360 system.

219.   Independent claims 1, 28 and 47 of the '880 patent are directed to and claim a module for an assembly for retaining or detaining storm water beneath a ground surface which provide a top deck portion extending beyond spaced-apart supports to provide a cantilevered section permitting fluid flow beneath the cantilevered section; such fluid flow being in the same direction as fluid flow through an interior channel between the supports. The STORM PRISM SP360 system also includes a module having a cantilevered deck section which permits fluid flow

thereunder with such flow being in the same direction as flow between spaced-apart supports.

220.   Pre-Con directly infringes, both literally and equivalently, independent apparatus claim 1 of the '880 patent.  Claim 1 of the '880 patent recites as follows (with lettering added for reference purposes):

[A]   1. A module for use in an assembly including a plurality of modules for managing the detention or retention of fluid beneath a ground surface, the module comprising:

[B]   a deck portion having a main section, the deck portion having first and second side edges extending in a first direction, first and second ends each having a corresponding end edge extending in a second direction, and a thickness;

[C]   first and second spaced-apart supports that extend downward from the deck portion;

[D]   wherein the deck portion is located on top of the first and second supports, and the first and second supports are load-bearing;

[E]   wherein the first support is spaced inwardly from the first side edge so that part of the deck portion extends beyond an outside edge of the first support to form a first cantilevered section of the deck portion extending laterally from the main section;

[F]   wherein the second support is spaced inwardly from the second side edge so that another part of the deck portion extends beyond an outside edge of the second support to form a second cantilevered section of the deck portion extending laterally from the main section;

[G]   wherein the first and second supports together with the main section of the deck portion define an interior channel extending in the first direction permitting fluid flow therein;

[H]    wherein the first one of said supports includes a first pair of spaced-apart, load-bearing legs;

[I]    wherein the first cantilevered section and the first support define at least partially a first outer channel in the first direction permitting fluid flow therein beneath the first cantilevered section;

[J]    wherein the second cantilevered section and the second support define at least partially a second outer channel extending in the first direction permitting fluid flow therein; and

[K]    wherein the deck portion including the first and second cantilevered sections and the supports comprise a single, integrally-formed piece of precast concrete.

221.   The STORM PRISM SP360 system includes the feature of the claim preamble 1A because the system includes a plurality of modules for use in an assembly for managing the detention or retention of fluid beneath a ground surface.

222.   The STORM PRISM SP360 system includes the features of claim element 1B because at least the Storm Prism interior modules have a deck portion that is generally square (top view) and has two side edges extending in a first direction and two end edges extending in a second direction.  The deck portion of the Storm Prism interior modules has a thickness.

223.   The STORM PRISM SP360 system includes the features of claim element 1C because all Storm Prism modules have two vertical supports that extend from the deck portion to a bottom of the module. The following illustrations show an interior module of the Storm Prism assembly:

///

///

///

///

///

1
2
3
4
5
6
7
8

 

9   224.  The STORM PRISM SP360 system includes the features of claim
10  element 1D because all Storm Prism modules have two load-bearing supports that
11  extend downward from a deck portion located on top of the supports.

12  225.  The STORM PRISM SP360 system includes the features of claim
13  element 1E and 1F because the deck portion of at least each interior module includes a
14  main section (shown within the circular broken line on the drawing below).
15  Cantilevered sections extend laterally outward from the circular broken line. Each of
16  the two supports is spaced inwardly from the nearest side edge of the nearest
17  cantilevered section.   The side edges of the deck portion are side edges of the
18  cantilevered sections.



19
20
21
22
23
24
25

26  226.  The STORM PRISM SP360 system includes the features of claim
27  element 1G because the supports of each Storm Prism module are spaced apart from
28  one another. For at least the interior modules: together with the main section of the

deck portion, the supports define an interior channel for fluid flow through the module (below the main deck section and between the supports).

227. The STORM PRISM SP360 system includes the features of claim element 1H because each support of at least each interior module has two spaced-apart (shown in the drawing below), load bearing legs that at least partially define a cross channel between the legs.



228. The STORM PRISM SP360 system includes the features of claim element 1I and 1J because, for at least each interior module, each cantilevered section and its nearest support in the same module define at least partially an outer channel (a first and second outer channel) for fluid flow (see drawing below). Each outer channel is outward of its nearest support. The interior channel and the outer channels are generally parallel to each other, e.g., generally longitudinal.



229. The STORM PRISM SP360 system includes the features of claim element 1K because each module is a single, integrally-formed piece of precast concrete.

230. Pre-Con directly infringes, both literally and equivalently, independent apparatus claim 28 of the '880 patent. Claim 28 of the '880 patent recites as follows (with lettering added for reference purposes):

[A] 28. A module for use in an assembly including a plurality of modules for managing the detention or retention of fluid beneath a ground surface, the module comprising:

[B] a deck portion having a main section, the deck portion having first and second side edges, first and second ends each having a corresponding end edge, and a thickness;

[C] first and second spaced-apart supports that extend from the deck portion to a bottom of the module;

[D] wherein the deck portion is located on top of the first and second supports, and the first and second supports are load-bearing;

[E] wherein the first support is spaced inwardly from the first side edge so that part of the deck portion extends beyond an outside edge of the first support to form a first cantilevered section of the deck portion extending laterally from the main section;

[F] wherein the second support is spaced inwardly from the second side edge so that part of the deck portion extends beyond an outside edge of the second support to form a second cantilevered section of the deck portion extending laterally from the main section;

[G] wherein the first and second supports together with the main section of the deck portion define an interior channel extending in a first direction permitting fluid flow therein;

[H]   wherein each said support includes a respective pair of spaced-apart, load-bearing legs;

[I]   wherein the module includes a cross channel extending in a second direction;

[J]   wherein the first cantilevered section and the first support define at least partially a first outer channel in the first direction permitting fluid flow therein;

[K]   wherein the second cantilevered section and the second support define at least partially a second outer channel in the first direction permitting fluid flow therein;

[L]   wherein the deck portion including the first and second cantilevered sections, the supports, and the legs of the supports comprise a single, integrally-formed piece of precast concrete;

[M]   wherein each support includes a respective longitudinal portion that extends downward from an underside of the deck portion;

[N]   wherein each longitudinal portion of each support extends along the module in the first direction, beneath the deck portion, and extends downward to an intermediate position between the underside of the deck portion and the bottom of the module;

[O]   wherein the spaced-apart legs extend downward from the longitudinal portion of the respective supports;

[P]   wherein each longitudinal portion includes a bottom edge that provides one boundary of the cross channel;

[Q]   wherein the legs nearest to the end edges of the deck portion are spaced inwardly therefrom and define at least partially first and second outer cross channels extending in the second direction permitting fluid flow therein; and

///

**COMPLAINT**

[R]   wherein the interior channel, cross channel, first and second outer channels, and first and second outer cross channels are in fluid communication.

231.  The STORM PRISM SP360 system includes the feature of the claim preamble 28A because the system includes modules for use in an assembly including a plurality of modules for managing the detention or retention of fluid beneath a ground surface.

232.  The STORM PRISM SP360 system includes the features of claim element 28B because at least the Storm Prism interior modules have a deck portion that is generally square (top view) and has two side edges and two end edges extending.  The deck portion of the Storm Prism modules has a thickness.

233.  The STORM PRISM SP360 system includes the features of claim element 28C because  at least its interior modules have two vertical supports that extend downward from the deck portion to a bottom of the module. The following illustrations show a center module of the Storm Prism assembly:

 

234.  The STORM PRISM SP360 system includes the features of claim element 28D because  at least its interior modules have two load-bearing supports that extend downward from a deck portion located on top of the supports.

235.  The STORM PRISM SP360 system includes the features of claim element 28E and 28F because the deck portion of at least its interior modules includes

69

a main section (shown within the circular broken line on the drawing below). Cantilevered sections extend laterally outward from the circular broken line. Each of the two supports is spaced inwardly from the nearest side edge of the nearest cantilevered section.   The side edges of the deck portion are side edges of the cantilevered sections.



236.   The STORM PRISM SP360 system includes the features of claim element 28G because the supports of at least the interior module are spaced apart from one another. Together with the main section of the deck portion, the supports define an interior channel for fluid flow through the module (below the main deck section and between the supports).

237.   The STORM PRISM SP360 system includes the features of claim element 28H and 28I because, for at least each interior module, each support has two spaced-apart (shown in the drawing below), load bearing legs that at least partially define a cross channel between the legs which extends in a second direction (perpendicular to the direction of the interior channel).



238.   The STORM PRISM SP360 system includes the features of claim element 28J and 28K because, for at least each interior module, each cantilevered section and its nearest support in the same module define at least partially an outer channel (a first and second outer channel) for fluid flow (see drawing below). The outer channels are outward of the supports. The interior channel and the outer channels are generally parallel to each other, e.g., generally longitudinal.

239.   The STORM PRISM SP360 system includes the features of claim element 28L because each module is a single, integrally-formed piece of precast concrete.

240.   The STORM PRISM SP360 system includes the features of claim element 28M because the support of at least each interior module has such a longitudinal portion that extends downward from the underside of the deck portion (as shown representationally below):



241.  The STORM PRISM SP360 system includes the features of claim element 28N because, for at least each interior module, the longitudinal portion of the support extends in the first direction, is beneath the deck portion, and extends downward to an intermediate position between the underside of the deck portion and the bottom of the module (about 12 inches below the deck).

242.  The STORM PRISM SP360 system includes the features of claim element 28O because, for at least each interior module, the spaced-apart legs extend downward from the longitudinal portion of the supports (as shown in the drawing in Para 229 supra).

243.  The STORM PRISM SP360 system includes the features of claim element 28P because, for at least each interior module, the longitudinal portion includes a bottom edge, about 12 inches below the deck that provides an upper boundary for the cross channel.

244.  The STORM PRISM SP360 system includes the features of claim element 28Q because, for at least each interior module, the legs are spaced inward from not only the side edges of the deck but also the end edges and define at least partially first and second outer cross channels extending in the second direction permitting fluid flow therein.  See below illustration:



245.  The STORM PRISM SP360 system includes the features of claim element 28R because, for at least each interior module, all of the channels are in fluid communication: the interior channel, cross channel, first and second outer channels,

and first and second outer cross channels.

246.   Pre-Con directly infringes, both literally and equivalently, independent apparatus claim 47 of the '880 patent.  Claim 47 of the '880 patent recites as follows (with lettering added for reference purposes):

[A]   47. A module for use in an assembly for managing the detention or retention of fluid beneath a ground surface, the module comprising:

[B]   a precast, concrete structure formed as a single, integrally-formed piece having a rectangular deck portion having a length in a first direction and a width in a second direction;

[C]   first and second load-bearing, spaced-apart support members, each including a respective pair of spaced-apart, downwardly-dependent, load-bearing legs, thereby including first and second pairs of legs;

[D]   wherein the deck portion overhangs the first and second pairs of legs in both the first direction and the second direction perpendicular to the first direction to form four cantilevered sections of the deck;

[E]   an interior channel beneath the deck portion extending in the first direction, having the first pair of legs on a first side of the interior channel and the second pair of legs on a second side of the interior channel;

[F]   a cross channel extending in the second direction and extending between the first and second pairs of legs;

[G]   a first outer channel extending beside the interior channel, extending laterally beside one pair of the legs;

[H]   a second outer channel extending beside the interior channel, extending beside the other pair of the legs; and

[I]     wherein all of said channels are in fluid communication.

247.   The STORM PRISM SP360 system includes the feature of the claim preamble 47A because the system includes modules for use in an assembly for managing the detention or retention of fluid beneath a ground surface.

248.   The STORM PRISM SP360 system includes the features of claim element 47B because the Storm Prism assembly includes modules formed as a single, integrally-formed piece of precast concrete. For at least the interior modules, the deck portion is generally square, which is a form of rectangle.  It has length and width in first and second directions, respectively.

249.   The STORM PRISM SP360 system includes the features of claim element 47C because, for at least each interior module, the module has two pairs of load-bearing, spaced apart support members. Each support member has a pair of spaced-apart, downwardly-depending load-bearing legs:

 

250.   The STORM PRISM SP360 system includes the features of claim element 47D because, for at least each interior module, the deck portion overhangs all four legs in the first and second directions to form four cantilevered sections of the deck portion.

251.   The STORM PRISM SP360 system includes the features of claim element 47E because, for at least each interior module, an interior channel extends beneath the deck in the first direction. The first pair of legs is on one side of the

**COMPLAINT**

interior channel and the second pair of legs is on a second side of the interior channel as shown in the below illustration.



252.    The STORM PRISM SP360 system includes the features of claim element 47F because, for at least each interior module, the module has a cross channel extending between (through) the first and second pairs of legs (as shown representatively in the below illustration).



253.    The STORM PRISM SP360 system includes the features of claim element 47G and 47H because, for at least each interior module, a first outer channel extends beside the interior channel and laterally beside one pair of legs and a second outer channel extends beside the interior channel and laterally beside the other pair of legs as shown below.





254. The STORM PRISM SP360 system includes the features of claim element 154I because, for at least each interior module, all of the channels are in fluid communication: the interior channel, cross channel, first and second outer channels, and first and second outer cross channels.

255. For at least these reasons, Pre-Con through its making, using, offering for sale and/or sale of at least the STORM PRISM SP360 system in the United States is directly infringing the '880 patent under 35 U.S.C. § 271(a).

256. Additionally, whenever Pre-Con or its customer or installer makes, uses, or assembles at least the STORM PRISM SP360 system in the United States, that is a further act of direct infringement of the '880 patent under 35 U.S.C. § 271(a).

257. Pre-Con has been and is still actively, knowingly and intentionally aiding and abetting and inducing infringement of the '880 patent by non-parties in violation of 35 U.S.C. § 271(b), including end-users, despite Pre-Con's knowledge of the '880 patent.

258. By reason of Pre-Con's infringing activities, StormTrap has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

259. Pre-Con's acts complained of herein have damaged and will continue to damage StormTrap irreparably. StormTrap has no adequate remedy at law for these wrongs and injuries. StormTrap is therefore entitled to injunctive relief restraining and enjoining Pre-Con and its agents, servants, and employees, and all persons acting

thereunder, in concert with, or on their behalf, from infringing the '880 patent.

260. Pre-Con is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any apparatus or process/method claimed in the '880 patent, and Pre-Con's conduct is, in every instance, without the consent of StormTrap.

261. StormTrap called Pre-Con's attention to its infringement of the aforementioned patent. Pre-Con requested more particular information in the form of claim charts, which StormTrap voluntarily provided. These were extensive and detailed amounting to 38 pages of single-spaced claim charts. Pre-Con has consistently avoided responding with even one reason why it does not infringe StormTrap's patents. Despite this correspondence, Pre-Con continues to offer at least its STORM PRISM SP360 system for sale in the United States.

262. Pre-Con's infringement has been and continues to be willful.

## SIXTH CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 9,464,400

263. StormTrap incorporates by reference each and every allegation contained in Paragraphs 1 through 262 as though fully set forth at length herein.

264. StormTrap owns all right, title, and interest in U.S. Patent No. 9,464,400 ("the '400 patent"), including the right to sue thereon and the right to recover for infringement thereof. Exhibit F to this Complaint is a true and correct copy of the '400 patent.

265. The '400 patent was duly and legally issued to StormTrap by the USPTO on October 11, 2016.

266. The '400 patent is valid and enforceable.

267. StormTrap has not granted any license to Pre-Con under the '400 patent.

268. The '400 patent generally invents a solution for underground storm water detention or retention and involves a modular construction, typically of pre-cast concrete. The '400 patent addresses problems of fluid flow within the assembly by

providing modules having a top deck portion with a cantilevered section extending above and beyond a load-bearing support.  Such cantilevered arrangement provides for fluid flow within an outer channel beneath the cantilevered section of the deck portion in addition to flow through an interior channel between the supports. The assembly of the '400 patent also concerns side modules which have a wall.   The STORM PRISM SP360 system uses the '400 patented invention.

269.   Pre-Con has directly infringed and is continuing to infringe the '400 patent, literally and via equivalents, as defined by various claims of the patent, in violation of 35 U.S.C. § 271, by making, using, importing, offering to sell, and selling in this judicial district and elsewhere the STORM PRISM SP360 system; and has indirectly infringed the '400 patent by inducing end users to use the STORM PRISM SP360 system.

270.   Independent claims 1 and 21 of the '400 patent are directed to and claim an assembly for managing the retention or detention of fluid beneath a ground surface which generally comprise a first module having a top deck portion extending beyond spaced-apart supports to provide a cantilevered section permitting fluid flow beneath the cantilevered section; such fluid flow being outward of the supports and in the same direction as fluid flow through an interior channel between the supports. Claim 1 also includes a side module including two supports where one of the supports is a side wall. The STORM PRISM SP360 system includes interior modules corresponding to the first module recited in claims 1 and 21.  The STORM PRISM SP360 system also includes a side module corresponding to the side module recited in claim 1.

271.   Pre-Con directly infringes, both literally and equivalently, independent apparatus claim 1 of the '400 patent.  Claim 1 of the '400 patent recites as follows (with lettering added for reference purposes):

> [A]    1. An assembly for managing the detention or retention of fluid beneath a ground surface comprising:
>
> [B]    at least one first module and at least one side module;

[C]    wherein the at least one first module comprises: first and second load-bearing, spaced-apart supports;

[D]    a deck portion having first and second side edges and first and second end edges, the deck portion including a main section, the deck portion being located on top of the first and second supports;

[E]    wherein the first and second supports and the main section at least partially define an interior channel extending in a first direction;

[F]    wherein the deck portion includes a first cantilevered section extending laterally from the main section, wherein the first side edge of the deck portion is a side edge of the first cantilevered section;

[G]    wherein the first cantilevered section extends beyond the first support so that the first support and first cantilevered section at least partially define an outer channel of the module extending in the first direction;

[H]    wherein the deck portion including the first cantilevered section and the first and second load-bearing supports comprise a single, integrally-formed piece of precast concrete;

[I]    wherein the at least one side module comprises: a deck portion having first and second side edges and first and second end edges;

[J]    at least two supports disposed below the deck portion and extending to a bottom of the side module;

[K]    the supports being spaced apart and together with the deck portion at least partially defining an interior channel of the side module;

[L]    wherein one of the supports comprises a wall;

[M]    wherein at least two deck portions within the assembly are contiguous to one another;

///

[N]    wherein the supports of the at least one first module collectively include at least two load-bearing legs;

[O]    wherein the two legs at least partially define the interior channel;

[P]    wherein at least one of the legs at least partially defines the outer channel;

[Q]    wherein the two legs at least partially define a cross channel extending in a second direction, the cross channel providing fluid communication with the interior channel and the outer channel;

[R]    wherein the supports of the first module each include an elongate portion that extends from an underside of the deck portion, each elongate portion extending in the first direction between the first and second end edges and downward toward an intermediate position between the underside of the deck portion and a bottom of the module;

[S]    wherein a bottom edge of the elongate portion is located below the deck and above the bottom of the module and provides a boundary of the cross channel;

[T]    wherein the legs extend downward from the elongate portions;

[U]    wherein the legs on the first modules are spaced inwardly from the nearest one of said end edges of the module and at least partially define first and second outer cross channels extending in the second direction;

[V]    wherein the interior channel, first outer channel, cross channel, and outer cross channels of the first module are in fluid communication.

///

///

///

80

**COMPLAINT**

272.  The STORM PRISM SP360 system includes the feature of the claim preamble 1A because the system is an assembly for managing the detention or retention of fluid beneath a ground surface.

273.  The STORM PRISM SP360 system includes the features of claim element 1B because the assembly comprises at least one interior module having features corresponding to that of a first module as claimed and at least one side module having features corresponding to a side module as claimed.

274.  The STORM PRISM SP360 system includes the features of claim element 1C because its interior modules have two load bearing spaced-apart supports as shown representatively below:

 

275.  The STORM PRISM SP360 system includes the features of claim element 1D because the interior modules have a deck portion that is generally square (top view) and has two side edges extending in a first direction and two end edges extending in a second direction. The deck portion is on top of the first and second supports.

276.  The STORM PRISM SP360 system includes the features of claim element 1E because, for at least the interior module, the supports and the main section of the deck portion define an interior channel for fluid flow through the module in a first direction.

277.  The STORM PRISM SP360 system includes the features of claim element 1F because, for at least the interior module, the deck portion includes a main

section (shown within the circular broken line on the drawing below). Cantilevered sections extend laterally outward from the circular broken line. Each of the two supports is spaced inwardly from the nearest side edge of the nearest cantilevered section.  The side edges of the deck portion are side edges of the cantilevered sections.



278.  The STORM PRISM SP360 system includes the features of claim element 1G because, for at least the interior module, each cantilevered section and its nearest support in the same module define at least partially an outer channel for fluid flow. The outer channel is outward of the supports. The interior channel and the outer channel are generally parallel to each other, e.g., generally longitudinal in a first direction as indicated representatively in the below illustration:



1ˢᵗ outer channel        2ⁿᵈ outer channel

279.  The STORM PRISM SP360 system includes the features of claim element 1H because the Storm Prism interior module, including the deck portion with cantilevered sections and load-bearing supports, is formed as a single, integrally-formed piece of precast concrete.

280.  The STORM PRISM SP360 system includes the features of claim element 1I because the Storm Prism assembly has a side module that has a deck portion with at two side edges and two end edges.  On some side modules of the Storm Prism assembly, all four edges are straight.   The below illustration and photograph depict representative Storm Prism side modules showing such features.




281.  The STORM PRISM SP360 system includes the features of claim element 1J because each side module has at least two supports disposed below the deck portion which extend to the bottom of the module.

282.  The STORM PRISM SP360 system includes the features of claim element 1K because the supports of the side module are spaced apart, and together with the deck portion, define at least partially an interior channel of the side module.

283.  The STORM PRISM SP360 system includes the features of claim element 1L because one of the supports of the side module comprises a wall as shown representatively in the illustration and photograph below:

///

///

///

///

///

///



284.   The STORM PRISM SP360 system includes the features of claim element 1M because deck portions of modules in the Storm Prism assembly are contiguous to one another, as shown representatively in the following illustration:



285.   The STORM PRISM SP360 system includes the features of claim element 1N because the interior modules of the Storm Prism assembly includes two load-bearing legs as shown representatively below:

///

///

///

///

///



286. The STORM PRISM SP360 system includes the features of claim element 1O because the two legs at least partially define the interior channel.

287. The STORM PRISM SP360 system includes the features of claim element 1P because each leg partially defines an outer channel that is outward of the legs/support as shown representationally below:



288. The STORM PRISM SP360 system includes the features of claim element 1Q because the two legs of each support at least partially define a cross channel extending in a section direction (perpendicular to the interior channel); the cross channel extending between the legs (as shown representatively in the below illustration); the cross channel is in fluid communication with the interior channel and the outer channel.

289.   The STORM PRISM SP360 system includes the features of claim element 1R because the support of each module has such an elongate portion that extends downward from the underside of the deck portion; the elongate portion is between the end edges of the module and extends downward to an intermediate position between the underside of the feck portion and the bottom of the module (as shown representationally below):



290.   The STORM PRISM SP360 system includes the features of claim element 1S because the elongate portion has a bottom edge about 12 inches below the deck. It is above the bottom of the module and provides a boundary of the cross channel (as shown representatively in the figure in Para 281 *supra*).

291.   The STORM PRISM SP360 system includes the features of claim element 1T because the spaced-apart legs extend downward from the elongate portions of the supports (as shown representatively in the figure in Para 196 *supra*).

292.   The STORM PRISM SP360 system includes the features of claim element 1U because the legs on the interior modules of the Storm Prism assembly are inward from all edges of the deck portion of the module and define first and second outer cross channels that extend in the second direction (as shown representationally below).



293.   The STORM PRISM SP360 system includes the features of claim element 1V because all of the channels are in fluid communication: the interior channel, cross channel, first outer channel, and outer cross channels.

294.   Pre-Con directly infringes, both literally and equivalently, independent apparatus claim 21 of the '400 patent.  Claim 21 of the '400 patent recites as follows (with lettering added for reference purposes):

[A]    21. An assembly for the detention or retention of fluid beneath a ground surface, the assembly comprising:

[B]    a plurality of first modules arranged so that each first module is located adjacent to at least one other one of the modules of the assembly;

[C]    wherein each first module has a deck portion supported by respective first and second downwardly-dependent, load-bearing supports;

[D]    wherein each first module has an interior channel extending in a first direction and a cross channel extending in a second direction;

87

**COMPLAINT**

[E]     wherein each first module includes first and second load-bearing legs extending from the supports;

[F]     wherein each of the legs of each first module is located laterally inwardly from side edges of the deck portion so that the deck includes a main deck section and first and second cantilevered sections, the legs extending to a bottom of the module;

[G]     wherein each cantilevered section at least partially defines a portion of an outer channel extending in the first direction, a portion of a first outer channel being located beneath the first cantilevered section and beside the first support of the module, a portion of a second outer channel being located beneath the second cantilevered section and beside the second support;

[H]     wherein each outer channel, interior channel, and cross channel of a module are in fluid communication;

[I]     wherein the deck portion of each module including the first and second cantilevered sections and the supports comprises a single piece of integrally-formed precast concrete;

[J]     wherein at least one the channels of each first module permits substantially unobstructed fluid flow therein;

[K]     wherein the interior channels are aligned in at least one column of first modules; and

[L]     wherein the cross channels are aligned in at least one row of first modules.

295.   The STORM PRISM SP360 system includes the feature of the claim preamble of 21A because the system is an assembly for managing the detention or retention of fluid beneath a ground surface.

296.   The STORM PRISM SP360 system includes the features of claim element 21B because the Storm Prism assembly includes a plurality of interior

modules, each of which is located adjacent to at least one other module of the assembly.

297.   The STORM PRISM SP360 system includes the features of claim element 21C because the interior modules of the Storm Prism assembly have a deck portion and two load bearing spaced-apart supports as shown representatively below:

 

298.   The STORM PRISM SP360 system includes the features of claim element 21D because each interior module of the Storm Prism assembly has an interior channel in a first direction and a cross channel in the section direction (see representative figure below with interior channel shown in solid line and cross channel shown in broken line):



299.   The STORM PRISM SP360 system includes the features of claim element 21E because each of the interior modules of the assembly includes two load-bearing legs extending from the supports as shown representatively below:



300.   The STORM PRISM SP360 system includes the features of claim element 21F because each of the legs of each interior module extends to the bottom of the module and is located laterally inward from the side edges of the deck portion so the deck portion includes a main section (shown representatively within the circular broken line on the drawing below). Cantilevered sections extend laterally outward from the main deck section (shown representatively with the red circles in the drawing below).



301.   The STORM PRISM SP360 system includes the features of claim element 21G because each cantilevered section and its nearest support in the same module define at least partially an outer channel for fluid flow in the first direction. The outer channel is outward of the supports. The interior channel and the outer channel are generally parallel to each other, e.g., generally longitudinal in the first direction.

///



302.   The STORM PRISM SP360 system includes the features of claim element 21H because all of the channels (each outer channel, interior channel and cross channel) of a module are in fluid communication as shown representatively in the below illustration:



303.   The STORM PRISM SP360 system includes the features of claim element 21I because each interior module, including the deck portion with cantilevered sections and load-bearing supports, comprises a single piece of integrally-formed precast concrete.

304.   The STORM PRISM SP360 system includes the features of claim element 21J because the interior channel of a Storm Prism interior module located between the supports does not have a lower beam or weir and thus permits

unobstructed fluid flow (as shown representatively below illustration on the left). There is also unobstructed flow outside the supports, beneath the cantilevered sections of the deck portion (i.e., with in the outer channels) as shown representatively in the below illustration on the right with regard to an outer cross channel.

 

305. The STORM PRISM SP360 system includes the features of claim element 21K because the interior channels are aligned in at least one column (as shown representatively by the red line in the below illustration).



306. The STORM PRISM SP360 system includes the features of claim element 21L because when the Storm Prism assembly includes a row of first modules, the cross channels are aligned. (as shown representatively by the red line in the below illustration).

///



307. For at least these reasons, Pre-Con through its making, using, offering for sale and/or sale of at least the STORM PRISM SP360 system in the United States is directly infringing the '400 patent under 35 U.S.C. § 271(a).

308. Additionally, whenever Pre-Con or its customer or installer makes, uses, or assembles at least the STORM PRISM SP360 system in the United States, that is a further act of direct infringement of the '400 patent under 35 U.S.C. § 271(a).

309. Pre-Con has been and is still actively, knowingly and intentionally aiding and abetting and inducing infringement of the '400 patent by non-parties in violation of 35 U.S.C. § 271(b), including end-users, despite Pre-Con's knowledge of the '400 patent.

310. By reason of Pre-Con's infringing activities, StormTrap has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

311. Pre-Con's acts complained of herein have damaged and will continue to damage StormTrap irreparably. StormTrap has no adequate remedy at law for these wrongs and injuries. StormTrap is therefore entitled to injunctive relief restraining and enjoining Pre-Con and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the '400 patent.

///

312.   Pre-Con is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any apparatus or process/method claimed in the '400 patent, and Pre-Con's conduct is, in every instance, without the consent of StormTrap.

313.   StormTrap called Pre-Con's attention to its infringement of the aforementioned patent. Pre-Con requested more particular information in the form of claim charts, which StormTrap voluntarily provided. These were extensive and detailed amounting to 38 pages of single-spaced claim charts. Pre-Con has consistently avoided responding with even one reason why it does not infringe StormTrap's patents. Despite this correspondence, Pre-Con continues to offer its STORM PRISM SP360 system for sale in the United States.

314.   Pre-Con's infringement has been and continues to be willful.

## **PRAYER FOR RELIEF**

WHEREFORE, StormTrap prays for judgment against Defendant Pre-Con as follows:

A.     That the StormTrap patents asserted in Claims 1 through 6 (the "StormTrap Patents") are valid and enforceable;

B.     That Defendant has infringed and is infringing the StormTrap Patents;

C.     That such infringement is willful;

D.     That Pre-Con and its subsidiaries, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all persons in active concert or participation with it, be preliminarily and permanently enjoined from continued infringement of the StormTrap Patents;

E.     That Pre-Con be ordered to pay StormTrap its damages caused by Pre-Con's infringement of the StormTrap Patents and that such damages be trebled, together with interest thereon;

F.     That this case be declared exceptional pursuant to 35 U.S.C. § 285 and that StormTrap be awarded its reasonable attorneys' fees, litigation expenses and expert witness fees, and costs; and

**COMPLAINT**

1       G.    That StormTrap have such other and further relief as the Court deems just

2  and proper.

3  Dated: September 22, 2017     Respectfully submitted,

4

5       By: *Edward J. Manzo /BMD*

6       Edward D. Manzo

7       Donald Mizerk
     HUSCH BLACKWELL LLP

8       312-526-1535 Telephone
     312-655-1501 Facsimile

9       Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

## **DEMAND FOR JURY TRIAL**

StormTrap requests a jury as to all matters triable by jury.

Dated:  September 22, 2017          Respectfully submitted,


By: *Edward D. Manzo/BMD*


Edward D. Manzo
Donald Mizerk
HUSCH BLACKWELL LLP
312-526-1535 Telephone
312-655-1501 Facsimile

Attorneys for Plaintiff

**COMPLAINT**